UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

J W HOLLINS,

                    Plaintiff,                          Case No. 1:22-cv-230

v.                                                      Honorable Ray Kent

MICHIGAN CORRECTIONS
COMMISSION et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. On March 14, 2022, Plaintiff paid the full $402.00 filing fee. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the Michigan Corrections Commission (MCC),[2] the MDOC, MDOC Director Heidi Washington, and the following ECF personnel:

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] The MCC constitutes "the responsible authority for the administration of the correctional facilities, correctional industries, parole, and probation of the state." Mich. Comp. Laws § 791.202. The MCC is also responsible for "appoint[ing] a director of corrections who shall be qualified by training and experience in penology." *Id.*, § 791.203.

Warden Les Parish, Administrator Kenneth T. McKee, Hearing Investigator Unknown Goodspeed, Hearing Officer S. Burke, and Officer Andrew Fuller.

Plaintiff alleges that on August 22, 2020, Defendant Fuller "forged and falsified [a] misconduct report by deleting the information in [the] misconduct report written on the computer by Officer Anthony Suarez" (not a party). (ECF No. 1, PageID.3.) Plaintiff avers that the misconduct was initially issued to his cellmate, inmate Uphold. (*Id.*) Plaintiff alleges that Defendant Fuller deleted inmate Uphold's name, number, and the area in which contraband was located, and inserted Plaintiff's name, number, and "area of control in the misconduct report for the infraction of having contraband in his controlled area." (*Id.*, PageID.3–4.) According to Plaintiff, the misconduct report was issued after Defendant Fuller claimed to have confiscated a bag of fermented liquid "from the side of the locker that was in Plaintiff['s] control" while conducting routine rounds. (*Id.*, PageID.4.)

That same day, Sergeant Porter (not a party) reviewed the misconduct with Plaintiff. (*Id.*) Sergeant Porter wrote a statement on Plaintiff's behalf and asked him to sign the report. (*Id.*) Plaintiff refused. (*Id.*) Sergeant Porter "wrote refuses in the signature area and gave Plaintiff Hollins a copy of the ticket and contraband removal form." (*Id.*) On August 25, 2020, Plaintiff received a Prisoner Accused Statement Form from Defendant Goodspeed, who instructed Plaintiff to write a statement and return the form to him. (*Id.*)

On August 26, 2020, Plaintiff observed Defendant Fuller and Officer Suarez conducting cell searches on "B upper pod." (*Id.*) When Officer Suarez reached Plaintiff's cell, he stood outside the cell door until Defendant Fuller came to the cell. (*Id.*) Officer Suarez then entered the cell. (*Id.*) Plaintiff watched Defendant Fuller order inmate Uphold to exit the cell. (*Id.*) Defendant Fuller then "entered the cell and exit[ed] the cell under three minutes with a laundry bag with no

distinctive view of the content." (*Id.*, PageID.5.) Plaintiff claims that Defendant Fuller threw the laundry bag into the officers' kitchenette, locked the door, and went to the officers' station. (*Id.*)

Later that day, Plaintiff was called "to base and reviewed on [a] misconduct report written by Defendant Fuller." (*Id.*) The report indicated that during a cell search, "a milk bag with brown fermented liquid was found inside a laundry bag between the toilet and wall in Plaintiff['s] area of control." (*Id.*) Plaintiff was given a photo of the seized contraband. (*Id.*) According to Plaintiff, Defendant Fuller "wrote the [August 22, 2020] information in [the] contraband removal column, which dated back to the falsified and forged misconduct report submitted by Officer Fuller." (*Id.*) Later, Plaintiff "placed in the [u]nit [m]ail [b]ox his statement requesting a photo of the contraband and any other evidence that was not in the four corners of the misconduct report; also attached were interrogatory questions for Defendant Fuller." (*Id.*)

On August 27, 2020, Plaintiff was called out to see Defendant Goodspeed, who gave Plaintiff a copy of the picture of the contraband seized on August 22, 2020, and told Plaintiff "that he was not going to give the interrogatory questions to Defendant Fuller because they are not relevant." (*Id.*) According to Plaintiff, the picture of the contraband seized on August 26, 2020, "is identical to the [August 22, 2020] contraband picture with much less content of liquid substance." (*Id.*, PageID.5–6.)

On September 3, 2020, Plaintiff received a pass to 5 Block "for court." (*Id.*, PageID.6.) He took with him a copy of his interrogatories posed to Defendant Fuller. (*Id.*) Minutes after Plaintiff's arrival, Defendant Goodspeed locked Plaintiff "in the cage . . .with his hands cuffed behind his back." (*Id.*) He then connected remotely to Defendant Burke. (*Id.*) Defendant Goodspeed "read the case violation and turned the computer [to face] Plaintiff." (*Id.*) Defendant Burke told Plaintiff that the hearing was for the misconduct report issued on August 22, 2020. (*Id.*) Defendant Goodspeed

then informed Defendant Burke that he did not have the August 22, 2020, misconduct report. (*Id.*) He claimed that "it was stolen from his officer and he was going to talk[] to the Warden about it." (*Id.*) Defendant Goodspeed brought Plaintiff out of the cage and uncuffed him. (*Id.*) He told Plaintiff that the hearing for the August 22, 2020, report would be held the following week. (*Id.*)

On September 4, 2020, Plaintiff appeared before Hearing Officer Thomas Mohrman (not a party) for the August 26, 2020, misconduct report. (*Id.*, PageID.6–7.) Mohrman stated that the report was for "substance abuse and theft." (*Id.*) Mohrman determined that the August 22, 2020, date "stated in the contraband removal column" was "harmless error." (*Id.*) Mohrman found Plaintiff guilty of the misconduct "based on video showing the officer exiting the cell with [a] bag whose shape appears to contain liquid." (*Id.*) He sanctioned Plaintiff with 21 days' loss of privileges. (*Id.*)

On September 10, 2020, Plaintiff again appeared before Defendant Burke for the August 22, 2020, misconduct report. (*Id.*) During the hearing, Plaintiff requested video evidence. (*Id.*, PageID.8.) The hearing was continued so that the video could be obtained. (*Id.*) Later that day, after count, Plaintiff was given a pass to Defendant Goodspeed's office. (*Id.*) He avers that he "was forced to stand to continue the hearing proceedings via video conference." (*Id.*) Defendant Burke summarized the video evidence she reviewed. (*Id.*) Plaintiff leaned forward because he had difficulty hearing Defendant Burke. (*Id.*) One of the officers escorting him told him to move forward. (*Id.*) When Plaintiff did so, another officer stopped him by tugging on his arm. (*Id.*)

Plaintiff did not move forward and so heard only "fragments of the information from Defendant Burke." (*Id.*) He claims, however, that her hearing report summarized the video. (*Id.*, PageID.8–9.) the video showed Defendant Fuller "look into cell 229, and then step into cell 230."

6

(*Id.*, PageID.9.) Officer Suarez entered cell 229 and exited with two bags containing liquid. (*Id.*) The officers were seen in the hallway "looking at the two bags." (*Id.*)

Plaintiff claims further that Defendant Goodspeed withheld the statements provided by Defendant Fuller and Officer Suarez and that he first heard the statements at the misconduct hearing. (*Id.*) Defendant Burke omitted the statements made by Plaintiff denying the contraband. (*Id.*) She found Plaintiff guilty and sanctioned him to 30 days' loss of privileges. (*Id.*)

Plaintiff requested "the appeal package." (*Id.*) When he received it, he discovered that Defendant Goodspeed "wrote false statements that [were] not signed and enter[ed] the statements as statements made by Officer Suarez and Defendant Fuller." (*Id.*, PageID.10.) Subsequently, Defendant Parish forwarded correspondence notifying Plaintiff that, as of October 15, 2020, he was restricted to non-contact visits for 30 days. (*Id.*) On September 16, 2020, Defendant Washington forwarded correspondence to Defendant McKee, who provided such correspondence to Plaintiff on October 20, 2020. (*Id.*) That correspondence stated that Plaintiff's visits would be restricted and not considered for a year "based on misconduct guilty findings for substance abuse." (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his Eighth and Fourteenth Amendment rights. (*Id.*, PageID.10–11.) He also suggests that Defendants conspired to violate his rights, and that Defendants MCC, the MDOC, Washington, Parish, and McKee failed to properly train their officers. (*Id.*, PageID.11.) Plaintiff also asserts violations of state law. (*Id.*, PageID.10–11.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.13–14.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v.*

7

*Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

8

### A.      Claims Against the MDOC

As noted above, Plaintiff names the MDOC as a Defendant. Plaintiff, however, may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court dismisses Plaintiff's claims against the MDOC.

### B.      Civil Conspiracy Under § 1983

Plaintiff avers that Defendants acted in concert to violate Plaintiff's Eighth and Fourteenth Amendment rights. (ECF No. 1, PageID.11–12.) The Court's liberal reading of the complaint leads to a conclusion that Plaintiff is asserting a civil conspiracy claim against Defendants.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting

*Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete occurrences over a period of time involving numerous individual prison staff. He appears to rely entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances. As the Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts that support an inference that there was an

agreement among Defendants to violate his constitutional rights, Plaintiff fails to state a plausible claim of conspiracy.

### C.   Claims Against MCC, Washington, Parish, and McKee

Plaintiff vaguely alleges that Defendants MCC, Washington, Parish, and McKee violated his rights by failing to "properly train their [o]fficers to follow policies and customs." (ECF No. 1, PageID.11.)

The Court's reading of Plaintiff's complaint leads the Court to conclude that Plaintiff seeks to hold Defendants MCC, Washington, Parish, and McKee liable because of their supervisory positions within the MDOC and ECF. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege facts showing that Defendants MCC, Washington, Parish, and McKee encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff fails to allege any facts at all about Defendant MCC's conduct. With respect to Defendants Washington, Parish, and McKee, Plaintiff alleges only that they forwarded him correspondence indicating that his visitations rights were restricted. (ECF No. 1, PageID.10.) Such allegations, however, are insufficient to demonstrate that Defendants MCC, Washington, Parish, and McKee were personally involved in the events of which Plaintiff complains. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's claims against Defendants MCC, Washington, Parish, and McKee are premised upon nothing more than *respondeat superior* liability and, therefore, will be dismissed.

### D.      Eighth Amendment Claims

Plaintiff suggests that Defendants' actions violated his Eighth Amendment rights. (ECF No. 1, PageID.10.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it

contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate

health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

"Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Here, Plaintiff simply does not allege facts rising to the level of an Eighth Amendment violation. Nothing in his complaint leads the Court to conclude that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). Moreover, the filing of an allegedly false misconduct report does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2139, 1999 WL 1021856, at *2 (6th Cir. 1999); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001). Plaintiff's Eighth Amendment claims will, therefore, be dismissed.

### E.     Fourteenth Amendment Claims

#### 1.     Due Process

##### a.     Procedural Due Process

Plaintiff contends that his due process rights under the Fourteenth Amendment were violated during his misconduct proceedings. "The Fourteenth Amendment protects an individual

from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary

proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff has not included copies of the hearing reports with his complaint. He alleges, however, that on both occasions he was found guilty of substance abuse and theft. (ECF No. 1, PageID.7, 9.) Under MDOC Policy Directive 03.03.105, substance abuse is a Class I misconduct, and theft is a Class II misconduct. MDOC Policy Directive 03.03.105, Attachs. A, B (eff. July 1, 2018). A Class I misconduct is a "major" misconduct, and a Class II misconduct is a "minor" misconduct. *Id.*, ¶ B. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *Id.*, ¶ AAAA. A deprivation of earned good time is the type of sanction that could possibly affect the duration of a sentence.

Plaintiff, however, cannot allege that any major misconduct conviction—or any consequent loss of earned good time credits—affected the duration of his sentence. Plaintiff is

serving a life sentence without parole[3] imposed on October 5, 1983, for first-degree murder. *See* Mich. Dep't of Corr. Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=173730 (last visited Mar. 22, 2022). Although Plaintiff may be entitled to earn good time credits, *see Hill v. Snyder*, 308 F.Supp.3d 893, 908–10 (E.D. Mich. 2018) (citing *Moore v. Bochko*, 154 N.W.2d 437 (Mich. 1967)), the credits do not operate to inevitably affect the duration of his sentence because they are "subtracted" from a fixed maximum term[4] that does not exist when a defendant is sentenced to life imprisonment, *see Meyers v. Jackson*, 224 N.W. 356, 356–57 (Mich. 1929); *People v. Miller*, No. 341425, 2019 WL 2605760, at *5 (Mich. Ct. App. June 25, 2019) ("Good time credits 'are applied to a prisoner's minimum and/or maximum sentence . . . .'"); MDOC Policy Directive 03.01.100, ¶ H (eff. 1/6/2020) ("Prisoners . . . are eligible to earn good time credits on the minimum and maximum terms of the sentence . . . ."). Plaintiff, therefore, cannot show that the sanctions he received for the misconducts will "inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 486–87.

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Id.* at 484. Plaintiff suggests that for the August 26, 2020, misconduct, he received 21 days' loss of privileges. (ECF No. 1, PageID.7.) For the August 22, 2020, misconduct, he was sanctioned to 30 days' loss of privileges. (*Id.*, PageID.9.) Plaintiff also avers that he was restricted to non-contact visits for 30 days and that his visitation privileges were later restricted and not considered for a year. (*Id.*, PageID.10.)

---

[3] Michigan law provides that a first-degree murder conviction "shall be punished by imprisonment for life without eligibility for parole." Mich. Comp. Laws § 750.316(1).

[4] Where a prisoner is sentenced to a term of years, good time credits can impact the minimum, as well as the maximum, term. The completion of the minimum sentence, however, affects when a prisoner becomes eligible for parole. Because prisoners convicted of first-degree murder are never eligible for parole, the minimum term is of no significance. Mich. Comp. Laws § 791.234(6).

Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. July 1, 2018). Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (finding that participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (concluding that prisoners have no constitutional right to rehabilitative services). Moreover, the suspension of Plaintiff's visitation privileges also does not trigger a right to due process. *Cf. Bazzetta v. McGinnis*, 430 F.3d 795, 805 (6th Cir. 2005) (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))).

Furthermore, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See Wolff v. McDonnell,* 418 U.S. 539 (1974) (setting forth the minimum process required

18

for prison disciplinary proceedings that implicate a liberty interest). The right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)). Accordingly, for all of the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment due process claim.

**b.     Substantive Due Process**

Plaintiff may also be asserting substantive due process claims premised upon the alleged "unfair" investigation and hearing, as well as the allegedly false misconduct reports issued by Defendant Fuller. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard

for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in the major misconduct proceedings. Consequently, any intended substantive due process claim based upon Plaintiff's belief that the misconduct investigation and hearing were not properly conducted will be dismissed.

As to the allegedly false misconduct reports, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999); *see also Scott v. Churchill*, 377 F.3d 565 (6th Cir. 2004); *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016). Here, however, Plaintiff's complaint is devoid of facts suggesting that Defendant Fuller planted the contraband to attempt to frame Plaintiff. In any event, as discussed above, the misconduct charges did not subject Plaintiff to the possibility of the loss of liberty because Plaintiff is serving a sentence of life without parole. *See Cale*, 861 F.2d at 950 (noting that the planting of evidence to support a misconduct charge that could extend incarceration violates substantive due process); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293, at *1 (W.D. Mich. 2007) (concluding that a defendant's attempt to frame a prisoner by filing a false misconduct report violates substantive due process where the false charges subjected the prisoner to the possibility of a loss of liberty through segregation and loss of good-time credits). Consequently, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. Accordingly, such claims will be dismissed.

### 2.    Equal Protection

Plaintiff vaguely suggests that Defendants violated his Fourteenth Amendment equal protection rights. (ECF No. 1, PageID.12.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant aspects.'" *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)). In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [decision-maker's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff, however, fails to allege any facts suggesting that he was treated differently from any similarly situated inmates. He also fails to provide facts leading to an inference that any of the Defendants intentionally discriminated against him. Plaintiff's conclusory claim of an equal protection violation does not suffice. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff's Fourteenth Amendment equal protection claims will, therefore, be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    April 7, 2022                              /s/ Ray Kent
                                                     Ray Kent
                                                     United States Magistrate Judge